**********
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Hall and the briefs and oral arguments before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award, except for minor modifications. Accordingly, the Full Commission affirms the Opinion and Award of Deputy Commissioner Hall with modifications.
 **********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. The plaintiff is Miguel Morales-Rodriguez.
2. The defendant-employer was not covered by an insurance carrier on the risk at the time of the alleged injury by accident.
3. The plaintiff has not returned to work since the date of injury.
4. The parties stipulate that the following medical reports may be accepted as substantive evidence in this case of what the doctor would testify under oath if he/she were present and examined at this hearing, but reserve the right to depose said doctors at a date to be determined: Dr. David Ciliberto (1 page), Central Carolina Hospital (26 pages), and UNC Hospital (26 pages).
5. The issues before the Commission are:
 a. Whether an employment relationship existed between the employer and the plaintiff on the 10th day of September 2004, the alleged date of injury;
 b. Whether the employer is subject to the Workers' Compensation Act; and
 c. Whether the plaintiff suffered an injury by accident arising out of and in the course and scope of any employment with the employer.
 **********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT *Page 3 
1. The plaintiff was twenty-three years old at the time of hearing before the Deputy Commission and speaks limited English. The plaintiff worked as a plasterer for defendant Carolina Quality Exteriors, Inc., on September 10, 2004. The plaintiff had worked for Carolina Quality Exteriors, Inc., for eight or nine months. After the initial four months, the plaintiff began working in a supervisory role over the others that did the plastering for the owner, Mr. William (Bill) Vinson. The plaintiff kept up with everyone's hours and turned in timesheets to Mr. Vinson on a weekly basis. Mr. Vinson would then have everyone come to his house in Newton Grove to receive paychecks.
2. The plaintiff and three others completed applications and Mr. Vinson hired them to work for Carolina Quality Exteriors, Inc., as a plasterer in February 2004. The plaintiff began work at the rate of $10.00 per hour and was earning $13.00 per hour on September 10, 2004. The plaintiff worked 40 or more hours a week. Defendant provided no wage information or Form 22 as required by the Act. The plaintiff had an average weekly wage of $520.00, yielding a compensation rate of $346.84.
3. Carolina Quality Exteriors, Inc., was incorporated May 10, 1995 and Mr. Vinson was president and Cynthia Vinson was vice-president. Mr. Vinson testified that he worked the walls and that his wife was responsible for the paperwork and business matters, including obtaining workers' compensation insurance for Carolina Quality Exteriors, Inc. Ms. Vinson would write checks and Mr. Vinson would sign them. Mr. Vinson testified that he stopped operating Carolina Quality Exteriors, Inc., in July 2004 due to insurance problems, but he never formally dissolved the corporation. Mr. Vinson testified that he had workers' compensation insurance through August 20, 2004. No evidence was offered to show the period of the workers' compensation coverage or who the carrier was. *Page 4 
4. Mr. Vinson testified that the plaintiff approached him in May 2004 and wanted to work by the foot instead of by the hour, which is why there are no timesheets beyond May 2004. The plaintiff said he never told Mr. Vinson that he wanted to try working for himself. No evidence was offered by the defendants to show either payment for work done by the foot, a contract for work to be done by the foot, or bids submitted by the plaintiff for such work. If the plaintiff was contracting the work as he had testified, Mr. Vinson did not get a certificate of insurance from the plaintiff as required by N.C. Gen. Stat. § 97-19 when subcontracting work.
5. The plaintiff testified that Mr. Vinson took twelve percent (12%) out of his paychecks to pay for workers' compensation insurance and told the employees that if they had their own insurance he would not deduct for it. Mr. Vinson, when asked whether he deducted money for workers' compensation insurance, said "yes," but then pleaded the 5th Amendment when asked other questions about deductions. The plaintiff's Exhibit No. 11 is a copy of the plaintiff's 1099 for 2004 along with a copy of a statement purportedly sent with the 1099 that reads as follows:
Carolina Quality Exteriors, Inc.
2004
The following have been included in your 1099 gross amt
You may be able to use the following as a deduction
Workers' comp insurance $1323.93
Tools $6.00
Gas $236.67
Telephone $10.25

6. Based on the totality of the evidence of record, the Full Commission finds the plaintiff to be more credible than Mr. Vinson regarding the issue of workers' compensation insurance.
7. On September 10, 2004, the plaintiff was working with three other employees for Carolina Quality Exteriors, Inc., in Nags Head, North Carolina, when he fell off the roof of a *Page 5 
building injuring both of his knees, his jaw, chest, and neck. The plaintiff said that the employer told him not to go to the hospital because it would cause him problems. The plaintiff went to the hospital in Sanford, North Carolina. The plaintiff contends that he cannot bend his knee very well, cannot lift heavy things, and cannot kneel because of his knees. The plaintiff says he still is in need of medical treatment and the doctor had talked to him about knee surgery; however, the plaintiff has unpaid medical bills and cannot get continued treatment. The plaintiff contends he is still not able to return to work because of continued problems related to injuries and has been unable to afford continued medical treatment.
8. Mr. Vinson testified that Carolina Quality Exteriors, Inc., had as many as 20 employees at times and contends that he had workers' compensation insurance to cover those employees. The Full Commission finds that on September 10, 2004, Carolina Quality Exteriors, Inc., had at least four employees working for him, including the plaintiff, and was subject to the North Carolina Workers' Compensation Act.
9. Mr. Vinson gave the plaintiff instructions on what to do on the jobs, purchased all the material for the jobs, paid the employees on a weekly basis at his residence after the plaintiff turned in the time sheets, provided the plaintiff with the harness he used on the roof, and provided the plaintiff with a cell phone.
10. Based on the totality of the evidence of record, the Full Commission finds that the plaintiff was an employee of Carolina Quality Exteriors, Inc., on September 10, 2004, when he suffered a compensable injury by accident when he fell from the roof of a building on which he was doing plastering. *Page 6 
11. The Full Commission finds that Carolina Quality Exteriors, Inc., had three or more employees and did not have workers' compensation insurance from at least August 21, 2004, through at least September 10, 2004, which amounts to 21 days.
12. The plaintiff has incurred medical bills totaling $18,214.77 from the following medical providers:
 a. Central Carolina Hospital — $9,170.90;
 b. Dr. David S. Ciliberto — $157.07;
 c. UNC Physician Associates, and UNC Hospitals — $6,769.80.
13. Bill Vinson and Cynthia Vinson, as owners and officers of Carolina Quality Exteriors, Inc., had the ability and authority to bring their business into compliance with the Act and failed to do so.
 **********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. Defendant Carolina Quality Exteriors, Inc., regularly employed three or more employees at the time of the plaintiff's alleged injury and the Commission has jurisdiction of the parties and the subject matter. N.C. Gen. Stat. § 97-2.
2. The plaintiff sustained an injury by accident arising out of and in the course and scope of his employment with Carolina Quality Exteriors, Inc., on September 10, 2004. N.C. Gen. Stat. § 97-2.
3. The plaintiff had an average weekly wage of $520.00, yielding a compensation rate of $346.84. N.C. Gen. Stat. § 97-2. *Page 7 
4. The plaintiff is entitled to have Carolina Quality Exteriors, Inc., pay him temporary total disability compensation at the weekly rate of $346.84 from September 10, 2004, and continuing until further order of the Commission. N.C. Gen. Stat. § 97-29.
5. The plaintiff is entitled to have Carolina Quality Exteriors, Inc., pay for all medical expenses related to the plaintiff's injury by accident that are reasonably required to affect a cure, give relief or lessen the period of disability. N.C. Gen. Stat. §§ 97-2(19); 97-25.
6. Any employer required to secure the payment of compensation who refuses or neglects to secure such compensation shall be punished by a penalty of one dollar ($1.00) for each employee, but not less than fifty dollars ($50.00) nor more than one hundred dollars ($100.00) for each day of such refusal or neglect, and until the same ceases. N.C. Gen. Stat. § 97-94(b).
7. Any person who, with the ability and authority to bring an employer in compliance with N.C. Gen. Stat. § 97-93, willfully fails to bring the employer in compliance, shall be guilty of a Class H felony. Any person who, with the ability and authority to bring an employer in compliance with N.C. Gen. Stat. § 97-93, neglects to bring the employer in compliance, shall be guilty of a Class 1 misdemeanor. Any person who violates this subsection may be assessed a civil penalty by the Commission in an amount up to one hundred percent (100%) of the amount any compensation due the employer's employees injured during the time the employer failed to comply with N.C. Gen. Stat. § 7-94(d); andWhitted v. Palmer-Bee Co., 228 N.C. 447, 453, 46 S.E.2d 109, 112 (1948).
8. Carolina Quality Exteriors, Inc., had three or more employees and did not have workers' compensation insurance from at least August 21, 2004, through at least September 10, 2004, which amounts to 21 days. N.C. Gen. Stat. § 97-94(b). *Page 8 
9. Bill Vinson and Cynthia Vinson, as owners and officers of Carolina Quality Exteriors, Inc., had the ability and authority to bring their business into compliance with the Act and failed to do so. N.C. Gen. Stat. § 7-94(d).
 **********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendant Carolina Quality Exteriors, Inc., shall pay the plaintiff temporary total disability benefits from September 10, 2004, to March 23, 2006, in the amount of $27,747.20 plus a 10% late fee penalty of $2,774.72, for a total of $30,521.92. This sum has accrued and shall be paid in one lump sum directly to the plaintiff, subject to an attorney's fee set out below. Thereafter, defendant shall continue to pay the plaintiff temporary total disability benefits at the weekly rate of $346.84 until further Order of the Commission, also subject to the attorney's fee set out below.
2. Defendant Carolina Quality Exteriors, Inc., shall pay all medical expenses the plaintiff has incurred or will incur for treatment of his compensable injury, to the extent that such treatment was reasonable and necessary to effect a cure, give relief, or lessen the period of disability.
3. Defendant Carolina Quality Exteriors, Inc., shall reimburse the plaintiff for prescription medication, medical travel, and for medical expenses in accordance with the Act.
4. A reasonable attorney's fee of twenty-five percent (25 %) of the compensation due the plaintiff under paragraph 1 of this Award is approved for the plaintiff's counsel and shall be paid by Defendant Carolina Quality Exteriors, Inc. as follows: twenty-five percent (25%) of *Page 9 
the lump sum due the plaintiff shall be deducted from that sum and paid directly to the plaintiff's counsel; thereafter, every fourth compensation check shall be paid directly to the plaintiff's counsel until further order of the Commission.
5. The plaintiff's Counsel shall send a copy of this Opinion and Award to all of the healthcare providers in this matter who have not been paid for services provided to the plaintiff related to his compensable injury. The healthcare providers with outstanding bills in this mattershall not seek to obtain collection of these bills from the plaintiff. The healthcare providers shall direct their collection efforts at Bill Vinson and Carolina Quality Exteriors, Inc. whose address appears to be 362 Old Crow Road, Newton Grove, North Carolina 28366 based on the information in the Industrial Commission file. Failure to comply with this Order by the healthcare providers and their collection agencies will result in the initiation of contempt proceedings against persons in violation of this Order.
6. Pursuant to N.C. Gen. Stat. § 97-94(b), a penalty of $50.00 per day is assessed against Defendant Carolina Quality Exteriors, Inc., for failing to secure workers' compensation insurance from August 21, 2004, through at least September 10, 2004, which amounts to 21 days without workers' compensation insurance or $1,050.00. A check in the amount of $1,050.00 shall be made payable to the North Carolina Industrial Commission and sent directly to Assistant Attorney General Tracy Curtner at the Fraud Unit of the North Carolina Industrial Commission.
7. Pursuant to N.C. Gen. Stat. § 97-94(d), an additional penalty of 100% of the amount of the compensation due to the plaintiff in this matter is assessed against Defendant William F. Vinson, III for failing to comply with N.C. Gen. Stat. § 97-93. A check in the amount of $27,747.20 (representing the plaintiff's temporary total disability benefits from September 10, 2004, to March 23, 2006, as awarded herein) shall be made payable to the North Carolina *Page 10 
Industrial Commission and sent directly to Assistant Attorney General Tracy Curtner at the Fraud Unit of the North Carolina Industrial Commission.
8. Pursuant to N.C. Gen. Stat. § 97-94(d), an additional penalty of 100% of the amount of the compensation due to the plaintiff in this matter is assessed against Defendant Cynthia Vinson for failing to comply with N.C. Gen. Stat. § 97-93. A check in the amount of $27,747.20 (representing the plaintiff's temporary total disability benefits from September 10, 2004, to March 23, 2006, as awarded herein) shall be made payable to the North Carolina Industrial Commission and sent directly to Assistant Attorney General Tracy Curtner at the Fraud Unit of the North Carolina Industrial Commission.
9. This matter is referred to the Fraud Unit to investigate the allegation that defendants Carolina Quality Exteriors, Inc., William F. Vinson, III, and Cynthia Vinson were deducting money from employees' paychecks for workers' compensation insurance, and to pursue criminal charges if appropriate.
10. Defendant shall pay the costs.
This 18th day of June 2007.
S/___________________
 CHRISTOPHER SCOTT
 COMMISSIONER
CONCURRING:
S/___________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
S/___________________ PAMELA T. YOUNG COMMISSIONER